# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| LORETTA DECKER, | : | Case No. 3:16-cv-00303 |
| --- | --- | --- |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| NANCY A. BERRYHILL, Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

Plaintiff Loretta Decker brings this case *pro se* challenging the Commissioner's final decision to deny her application for Supplemental Security Income. The Commissioner denied Plaintiff's applications through a decision by Administrative Law Judge (ALJ) Henry Kramzyk. He found that Plaintiff was not under a benefits-qualifying disability despite her significant health problems. This case is presently before the Court for review of ALJ Kramzyk's decision by way of Plaintiff's *pro se* Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #12), the administrative record (Doc. #6), and the record as a whole.

On August 5, 2013, the date Plaintiff filed her application, she was 44 years old.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

She completed school through eighth grade. Her employment history involved short stints as housekeeper (and similar jobs) but no past relevant work.

Before issuing his non-disability decision, ALJ Kramzyk held a hearing during which Plaintiff testified. Plaintiff was not represented by counsel or a non-attorney representative during the hearing. ALJ Kramzyk explained to Plaintiff that she was entitled to representation, but she decided to proceed on her own. (Doc. #6, p. 30; *PageID#* 70).

Plaintiff testified that she could not work due to a learning disability and fibromyalgia. She has additional health problems involving her sciatic nerve in her lower back, polycystic ovarian syndrome, and depression. She explained that polycystic ovarian syndrome causes her to gain weight. At the time of the ALJ's hearing, she was five feet three inches tall and weighed 345 pounds. *Id*. at pp. 38-40; *PageID* #s 78-80.

Plaintiff explained that she experiences pain "all over…, all the time." *Id*. at p. 41; *PageID#* 81. Sometimes her pain is so bad she just lies down and cries. On a scale of one to ten (where ten is the worst pain), her pain is sometimes a five and sometimes a ten. Pain prevents her from sleeping well. Walking aggravates her pain. She testified, "I can't lift my arms up hardly anymore to fix my hair or anything because the muscles in my arms and back and stuff [sic]. It's hard to bend over." *Id*. at p. 41-42, *PageID#* 82.

Plaintiff estimated that she could lift ten pounds, walk about one-half a block, stand for about twenty minutes, and sit for about fifteen or twenty minutes. She cannot squat. Her fingers get numb after a few minutes of gripping, feeling, or manipulating items due to carpal tunnel syndrome. *Id*. at p. 44, *PageID* #84.

Plaintiff's household activities include sweeping and sometimes vacuuming and doing the dishes. She does not cook much. Her daughter does the laundry. She likes to get together with family or friends to just sit and talk. The summer before the ALJ's hearing, Plaintiff went on a two-week vacation to Kentucky where she visited and talked with family members. She very seldom goes to the movies or watches television. She goes out to dinner with family or friends. She tries to attend church twice a week. She does not read a lot but tries to read the Bible. She does not ever use a computer. Sometimes she needs her daughters to help her get dressed. She "hurts real bad" when she goes to the grocery store. *Id*. at 43; *PageID#* 83.

Plaintiff brought a friend, Ms. Dennis, with her to the administrative hearing. Ms. Dennis testified that she knows Plaintiff from church and sees her about once every two months. When they see each other, they talk about fellowship and they pray. They do not go to the movies together, go out to eat, or go on vacation together. Ms. Dennis has seen Plaintiff in excruciating pain when she is walking, for example. She has also seen Plaintiff melt down in tears because the pain in her back and legs are so bad that she can't do much. It is heartbreaking for Ms. Dennis "to see somebody in that kind of pain and know that there's not a lot you can do about it." (Doc. #6, p. 54, *PageID#* 94).

The administrative record contains Plaintiff's medical records, including the office notes of her treating physician Dr. Suzann Franer. In early January 2014, Dr. Franer listed that Plaintiff's diagnoses as polycystic ovarian disease, vulvar cancer (treated with vulvectomy in 2010), fibromyalgia, gastroesophageal reflux disease, morbid obesity, and depression/anxiety. Dr. Franer reported that Plaintiff's symptoms included "chronic pain

in muscles" and "chronic depression/anxiety." *Id*. p. 370, *PageID#* 410. She noted that Plaintiff had seen a rheumatologist who diagnosed Plaintiff with fibromyalgia. And, Dr. Franer indicated that Plaintiff "needs ongoing medical therapy" and "would benefit from psychological therapy." *Id*.

Dr. Franer's mention of a rheumatologist meant Dr. Robert A. Schriber. Dr. Schriber wrote to Dr. Franer in June 2013 reporting his diagnostic impressions as "1. Polyarthralgia of uncertain cause. I am not able to make a specific diagnosis. I do suspect a functional component to her symptoms (fibromyalgia syndrome). 2. Massive obesity." *Id*. at p. 266; *PageID#* 306. Dr. Schriber wrote a very brief letter in October 2013 stating Plaintiff "does not meet musculoskeletal listings[2] for disability though she is massively obese and may have some disability on that basis." *Id*. at p. 265; *PageID#* 305 (footnote added).

Turning to ALJ Kramyzk's decision, he found that Plaintiff was not under a disability by conducting the 5-step evaluation required by social security law. *See* 20 C.F.R. § 416.920(a)(4). His more significant findings began with his conclusion that Plaintiff had three severe impairments—polycistic ovarian syndrome, obesity, and borderline intellectual functioning—but her impairments did not automatically constitute a disability. (Doc. #6, pp. 10-13; *PageID* #s 50-53).

---

[2] A social security applicant that meets or equals the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, is automatically found to be under a disability. *See* 20 C.F.R. § 416.920(a)(iii); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

The ALJ next assessed Plaintiff's residual functional capacity or the most she could do despite her impairments. *See* 20 C.F.R. § 416.945(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Doing so, the ALJ found that despite Plaintiff's impairments, she could still perform sedentary work with many limitations, for example, never climbing ladders, ropes, or scaffolds; no reading or writing; and no fast-paced production work.[3] (Doc. #6, pp. 13-19; *PageID* #s 53-59). And, according to the ALJ, given Plaintiff's residual functional capacity plus her limited education, work experience, and age, she could still perform a significant number of jobs available to her in the national economy. The availability of such jobs—"circuit board assembler," "address clerk," and "document preparer"—meant that Plaintiff was not under a benefits-qualifying disability. *Id*. at p. 20; *PageID#* 60.

The present judicial review determines whether ALJ Kramzyk applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If ALJ Kramzyk failed to apply the correct legal criteria, his decision may be fatally flawed even if the record contains substantial evidence supporting his findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). A conclusion is supported by substantial evidence when "a

---

[3] Under social security law, sedentary work involves the least strenuous work activities, for example, "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a).

5

'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Plaintiff explains in her *pro se* Statement of Errors that she received Supplemental Security Income in the 1990s but stopped receiving benefits when she got married in 2000. She asserts that she still has the same health problems today that she had when she had previously received benefits plus others. She emphasizes that she has pain all over, can't walk far, can't bend over, doesn't sleep well, and can't raise her arms very high. She also has depression, fear, fibromyalgia, polycystic disease (which causes her to be overweight). (Doc. #9).

Liberally construing Plaintiff's *pro se* Statement of Errors in her favor, her assertions of "pain all over" and resulting limitations plus her mention of fibromyalgia place in issue the ALJ's findings regarding her pain testimony and fibromyalgia. *See Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 n.1 (6th Cir. 2010) ("keeping in mind the liberal standard accorded to *pro se* pleadings, we will address her contention here."); *see also Meek v. Comm'r of Soc. Sec.*, No. 96-3428, 1996 WL 596506, at *1 (6th Cir. 1996) ("liberally construing Meek's pro se brief …"); *Meadows v. Berryhill*, 5:17-176-DCR, 2017 WL 1147453, at *2 (E.D. Ky. March 27, 2017) (and cases cited therein).

The Commissioner contends that substantial evidence supports the ALJ's decision. In support of this, the Commissioner mentions fibromyalgia on two occasions. First, the

6

Commissioner notes that Dr. Schriber suspected fibromyalgia but did not perform the proper tests to confirm the condition. (Doc. #12, p. 8; *PageID*# 517 n.8). The Commissioner observes that although the ALJ did not find fibromyalgia to be a severe impairment, he considered all of Plaintiff's impairments, including her non-severe impairments. *Id*. Second, the Commissioner maintains that if Plaintiff asserts a disability based on fibromyalgia and polycystic ovarian syndrome, she is mistaken because not every diagnosable impairment is necessarily disabling, because Plaintiff failed to meet her burden of showing her conditions were disabling, and because the ALJ explained why her impairments were not severe and why she could perform a limited range of sedentary work. *Id*. at p. 10, n.10; *PageID*# 519, n.10.

The Commissioner's contentions regarding the ALJ's findings and consideration of Plaintiff's fibromyalgia overlook a glaring problem in the ALJ's decision: The ALJ failed to consider whether Plaintiff's fibromyalgia constitutes a medically determinable impairment under the 2010 American College of Rheumatology (ACR) Preliminary Diagnostic Criteria. The ALJ correctly reported that Dr. Franer documented six trigger points when examining Plaintiff, rather than eleven out of eighteen trigger points required to meet the 1990 ACR Criteria for Classification of Fibromyalgia. (Doc. #6, pp. 10-11; *PageID* #s 50-51); *see id.* at p. 250; *PageID*# 290. Yet, trigger points are not part of the 2010 ACR Preliminary Criteria, which looks instead for (1) a history of widespread pain, (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and (3) exclusion of other potential causative disorders. Social Security Ruling 12-2P includes this diagnostic criteria in its description of how to determine

7

whether a person has a medically determinable impairment of fibromyalgia. *See* Soc. Sec. R. 12-2P, 2010 WL 3104869, *3 (July 25, 2012). The ALJ did not evaluate Plaintiff's assertions of disabling fibromyalgia under this more recent (2010) Criteria at any point in his sequential evaluation. As a result, the ALJ did not properly consider Plaintiff's assertion of disabling fibromyalgia as Soc. Sec. R. 12-2P requires warrants reversal of his decision.

The ALJ committed further error to the extent he required objective evidence of fibromyalgia. See Doc. #6, pp. 10-11; *PageID* #s 51-52. Case law establishes, and Soc. Sec. R. 12-2p indicates, that a patient suffering from fibromyalgia presents to physicians with no objective signs or symptoms. Indeed, "fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243 (footnote omitted) (citing, in part, *Preston v. Sec'y of HHS*, 854 F.2d 815, 820 (6th Cir. 1988)); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (the ALJ mistakenly "depreciated the gravity of Sarchet's fibromyalgia because of the lack of any evidence of objectively discernible symptoms, such as a swelling of the joints."); *Starcher v. Comm'r of Soc. Sec.*, No. 2:15cv3113, 2016 WL 5929048, at *5 (S.D. Ohio, 2016) (Kemp, M.J.) report and recommendation adopted, 2016 WL 6493427 (Nov. 2, 2016) (Graham, D.J.).

The Commissioner recognizes that the ALJ did not find that Plaintiff's fibromyalgia was a severe impairment. The Commissioner states, "The ALJ still considered Plaintiff's impairments including the one that were not severe." (Doc. #12, p. 8; *PageID*# 517). The ALJ's decision does not fully bear this out. At step 3 of the ALJ's

8

sequential analysis, the ALJ does not mention fibromyalgia and does not specifically address whether fibromyalgia equals a listing.  This falls short of complying Soc. Sec. R. 12-2p ("At step 3…, we determine whether FM [fibromyalgia] equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.").  At best, the ALJ nods in this direction by noting that he did not find Plaintiff's "obesity" (he does not say "morbid" or "level III" obesity) "to augment any condition to a severity that would satisfy another listed impairment." (Doc. #6, p. 11-12; *PageID* #as 51-52).  This conclusory statement, however, is insufficient to support the Commissioner's suggestion that the ALJ considered all of Plaintiff's impairments, including fibromyalgia, as step three of his sequential evaluation.

The Commissioner's contention that the diagnosis of fibromyalgia by itself is insufficient to establish a disability is correct as far as it goes.  *See Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986); *see also* 20 C.F.R. § 416.927(e)(1).  The record, however, contains evidence beyond a mere diagnosis, including longitudinal medical records from Plaintiff's treating physician Dr. Franer who repeatedly diagnosed Plaintiff with fibromyalgia, referred her to a specialist (Dr. Schriber) for further evaluation, and attempted to treat Plaintiff's fibromyalgia with pain medication (Flexeril and Tramadol, for example), and by helping her gain access to aqua therapy.  (Doc. #6, pp. 325, 402, 425 ; *PageID*#s 365, 419, 465).  Although Dr. Schriber did not specifically diagnose Plaintiff with fibromyalgia, his brief time seeing and examining Plaintiff led him to suspect that her fibromyalgia is a "functional component

9

of her symptoms." (Doc. #6, p. 325; *PageID*# 365). He thus did not rule out fibromyalgia, and his suspicion of fibromyalgia is not inconsistent with Dr. Franer's repeated fibromyalgia diagnosis and treatment.

The ALJ also erred by discounting Dr. Schriber's opinion that Plaintiff "may have some disability…" on the basis of her massive obesity. *Id*. at p. 265; *PageID*# 305. The error here is that the ALJ reasoned, "the final responsibility for deciding whether a person is disabled is reserved to the Commissioner, and the undersigned gives no special significance to the source of an opinion on issues reserved to the Commissioner…." (Doc. #6, p. 19; *PageID*# 59). The fact that Dr. Schriber expressed an opinion on the ultimate issue of Plaintiff's disability status is not a valid reason to discount or ignore it. "The pertinent regulation says that 'a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.' That's not the same thing as saying that such a statement is improper and therefore to be ignored...." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (internal citation omitted); *see Kalmbach v. Comm'r of Soc. Sec.*, No. 09-2076, 409 F. App'x 852, 861 (6th Cir. 2011) ("the fact that the ultimate determination of disability, *per se,* is reserved to the Commissioner, 20 C.F.R. § 404.1527(e) [§ 416.927(d)(1)], did not supply the ALJ with a legitimate basis to disregard the physicians' [opinions].")

The Commissioner points out that no doctor concluded Plaintiff had more limitations than those the ALJ found in his assessment of her residual functional capacity for a limited range of sedentary work. This is correct. Still, because Plaintiff proceeded *pro se* during her administrative proceedings, the ALJ had a "'duty to exercise a

10

heightened level of care and assume a more active role' in the proceedings." *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citations omitted). This heightened level of care included an "'obligation to develop a full and fair record…,'"and a duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Id*. at 1051-52. ALJs "must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" *Id.* at 1052. To determine whether the ALJ met his heightened duty, courts "'scrutinize the record with care'" on a case-by-case basis. *Id*.

In the present case, ALJ Kramzyk faced a record involving a *pro se* claimant with a limited (eighth grade) education, intellectual difficulties described by the ALJ as borderline intellectual functioning, level III obesity, and no treating or examining physician's opinion concerning her work abilities and limitations. The ALJ made no effort to obtain an opinion from treating physician, Dr. Franer, or from her consulting specialist, Dr. Schriber, or from an examining physician. Although these efforts may not always be needed in *pro se* cases for an ALJ to satisfy his heightened duty, Plaintiff's administrative record cried out for such additional efforts in order for the ALJ to obtain a fail and fair record. This is so because of the unique combination of circumstances and evidence presented to the ALJ. Not only was Plaintiff proceeding *pro se*, she was further hindered by her limited educational status and intellectual difficulties. The medical evidence, moreover, left open the reasonable possibility that the combination of Plaintiff's impairments prevented her from engaging in any substantial gainful activity. This included evidence repeatedly documented her obesity, Dr. Franer's records of the

long-term treatment she provided Plaintiff for fibromyalgia and other serious health problems, and Dr. Schriber's reference to Plaintiff's "massive obesity" potentially leaving her disabled.

The presence of the above problems in the ALJ's decision does not mandate the conclusion that Plaintiff is under a benefits qualifying disability. Yet, she is entitled to a remand of this matter for further administrative proceedings because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *See Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *e.g., Blakley*, 581 F.3d at 410 (remanding for further administrative proceedings).

On remand, the ALJ should be directed to compile a full and fair record by, at a minimum, (1) re-contacting Dr. Franer to obtain her opinions about Plaintiff's impairments, work abilities, and work limitations, and (2) referring Plaintiff to an examining medical source for assessment of her impairments, work abilities, and work limitations, see 20 C.F.R. § 416.917. Although the ALJ is not required to do so in every case, *see id.*, compiling such evidence is warranted in the instant case due to Plaintiff's *pro se* status and the ALJ's heightened duty to "conscientiously probe into, inquire of, and explore for all the relevant facts." *Lashley*, 708 F.2d at 1051-52. Once a full and fair record has been compiled, the ALJ shall re-assess Plaintiff's disability status under Social Security Administration's five-step sequential evaluation.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's final non-disability decision on March 23, 2015 be vacated and the case be remanded to the Social Security Administration

pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations; and

2. The case be terminated on the docket of this Court.

June 19, 2017                                             *S/Sharon L. Ovington*
                                                         Sharon L. Ovington
                                                         United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).